| | |
|---|---|
| TENNESSEE FARMERS COOPERATIVE, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | )    No. 3:25-CV-01358 |
| v. | ) |
| | ) |
| SPENCIE AUCTION SOFTWARE, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

<u>**MEMORANDUM OPINION**</u>

In this contract dispute, Spencie Auction Software, LLC, ("Spencie") has filed a Motion to Dismiss based on lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Tennessee Farmers Cooperative ("TFC") allegedly transferred its interest in the contract and therefore lacks standing to bring this case. (Doc. No. 8). TFC has responded in opposition, (Doc. No. 10), and Spencie has filed a reply. (Doc. No. 13).[1] For the reasons that follow, the Court will deny the motion.

## I.      Factual Allegations and Procedural History

Around January 26, 2024, TFC and Spencie entered into a Statement of Work ("Software Agreement") for the development and purchase of an online auction platform, for $350,000. (Doc. No. 1-1 at 2-3, ¶¶ 12 and 13). The parties agreed that "[a]t the completion of the project,

---

[1] Although the procedural timing of filings did not affect the Court's obligation to address subject-matter jurisdiction, Fed. R. Civ. P. 12(h), the Court stresses the importance of meeting the required deadlines affecting filings in the future. The Court expects all parties to become familiar and comply with applicable deadlines established by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. <u>See</u> M.D. Tenn. R. 7.01(a).

the code is the property of TFC and Spencie owned jointly and equally." (Id. at 14). Though TFC paid Spencie the agreed upon purchase price, Spencie "was never able to achieve the fully functional online auction platform." (Id. at 3, ¶ 14). When Spencie was unable to deliver a functional platform and refused to refund any portion of the payments, (Id. at 3, ¶¶ 14-15), TFC was forced to retain another software vendor and incur further expense. (Id. at 3, 5, ¶¶ 16, 22-23).

After executing the Software Agreement, TFC, as a member, along with two other entities formed LiveAg, LLC ("LiveAg"). (Doc. No. 9 at 5). In addition to the Limited Liability Company Agreement of LiveAg ("Company Agreement"), the members executed a Contribution Agreement. (Doc. Nos. 9-1 & 9-2). Under the section outlining TFC contributions, Section 1.3(d) states, in relevant part:

> Within five days after written request from the Company, TFC will contribute to the Company all software, goodwill, and intellectual property owned by TFC related to the software developed by Spencie Auction Software, LLC in and under the Statement of Work by Spencie, LLC for Tennessee Farmers Cooperative dated January 26, 2024 (SOW#2024-01-19) and will transfer the contract rights of TFC in the Statement of Work to the Company. It is understood … that TFC is contributing TFC's ownership rights in the code, software, and intellectual property acquired under the statement of Work to the Company.

(Doc. No. 9-2 at 3, §1.3(d)). However, both TFC's Chief Financial Officer and LiveAg's Vice President of Operations maintain such a transfer never took place. (Doc. Nos. 11, 12). TFC brings this case alleges breach of contract and unjust enrichment claims against Spencie. (Doc. No. 1-1 at 4-5).

## II.    Analysis

The question before this Court is whether TFC has lost Article III standing when it agreed to transfer its interest in the auction software to LiveAg. Spencie's position is straightforward. By agreeing to transfer its interest in the software, TFC's injury is eliminated and deprives the court

2

of the ability to redress its injury. Hence, once TFC transferred its interest, it forfeited any Article III standing. However, it is undisputed that TFC has yet to, in fact, transfer its interest. (Doc. Nos. 11, 12). Spencie tries to avoid this reality by applying Delaware law to Section 1.3(d) of the Contribution Agreement in its reply brief. (Doc. No. 9-2 at 6, §3.10).

The Court need not resolve or consider that TFC has not transferred anything because although Spencie presents the issue as a question of standing, it is more accurately described as an attack on TFC's capacity to sue, which is a "'distinct legal question' from standing." In re AME Church Emp. Ret. Fund Litig., No. 1:22-md-03035-STA-jay, 2024 U.S. Dist. LEXIS 34302, at *27 (W.D. Tenn. Feb. 28, 2024) (citing Tri-Med Fin. Co. v. Nat'l Century Fin. Enters., Inc., 208 F.3d 215 (6th Cir. 2000) (unpublished table decision) and Cranpark Inc. v. Rogers Grp. Inc., 821 F.3d 723, 730 (6th Cir. 2016)) (the Court holding that "one who sells his interest in a cause of action is not deprived of Article III standing" instead, "is susceptible to a real-party-in-interest challenge"); see also White v. JPMorgan Chase Bank, NA., 521 F.App'x. 425, 428 (6th Cir. 2013) (citing Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528, 531-32 (6th Cir. 2002) (detailing the distinction between Article III standing and Rule 17(a)).

Federal Rule of Civil Procedure 17 requires that "[a]n action…be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Its focus is on "the substantive law creating the right being sued upon" and whether it "affords the party bringing suit a substantive right to relief." Cranpark, 821 F.3d at 730 (quoting Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994))(internal quotation marks omitted). The distinction is critical to understand because "the real-party-in-interest requirement is generally viewed as 'an affirmative defense that can be waived', while Article III standing is plaintiff's burden to prove and can be raised at any point." Id. (internal quotation marks and citations

3

omitted). The Court will, nevertheless, address Spencie's challenge to Article III standing given that it is an essential threshold matter determinative of a federal court's jurisdiction. See In re AME Church Emp. Ret. Fund Litig., 2024 U.S. Dist. LEXIS 34302, at *28.

### A. Standing

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject- matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Doe v. Tenn., No. 3:24-cv-00777, 2025 U.S. Dist. LEXIS 193145, at *8 (M.D. Tenn. Sept. 30, 2025). As standing is a jurisdictional requirement, if no standing exists, "then the court lacks subject-matter jurisdiction." Tenn. Gen. Assembly v. U.S. Dep't of State, et al., 931 F.3d 499, 507 (6th Cir. 2019).

In bringing a motion to dismiss for lack of subject matter jurisdiction, the movant may raise either "a facial challenge to the sufficiency of the pleadings", or a factual challenge based on facts establishing the existence of standing. In re AME Church Emp. Ret. Fund Litig., 2024 U.S. Dist. LEXIS 34302, at *28 (citing Assoc. of Am. Physicians & Surgeons v. U.S. Food & Drug Admin., 13 F.4th 531, 543 (6th Cir. 2021). Here, Spencie clearly states that it is raising a factual challenge. (Doc. No. 9 at 2). When bringing a factual attack, a court has "broad discretion" as to "what evidence to consider[,]" including "evidence outside of the pleadings" which "the [c]ourt may weigh…and determine the effect of that evidence on the court's authority to hear the case." J.A. v. Williamson Cnty. Bd. of Educ., 731 F. Supp. 3d 938, 945 (M.D. Tenn. 2024)(citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)).

Moreover, the "irreducible constitutional minimum[,]" to prove standing, Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560 (1992), is a plaintiff "must have (1) suffered an injury in fact, (2)

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

First, Spencie argues that "TFC cannot demonstrate an injury-in-fact because it no longer possesses a legally protected interest in the contract or software at issue." (Doc. No. 9 at 5). But as explained above, TFC has not transferred its asset[2] and as a result, has suffered harm by Spencie's alleged non-performance. An injury-in-fact must be both "(a) concrete and particularized…and (b) actual or imminent, not conjectural or hypothetical[.]" Lujan, 504 U.S. at 560. One of the most common traditional injuries includes monetary loss, meaning "[i]f a defendant has caused…. monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." TransUnion, LLC v. Ramirez, 594 U.S. 413, 425 (2021). "An injury is particularized if it affects 'the plaintiff in a personal and individual way.'" In re AME Church Emp. Ret. Fund Litig., 2024 U.S. Dist. LEXIS 34302, at *29-30 (quoting Spokeo, 578 U.S. at 339).

This Court finds that TFC has alleged an actual injury. TFC has suffered the quintessential economic injury traceable to Spencie's alleged failure to comply with the contract and deliver acceptable software. TFC contracted with Spencie to obtain a "software platform capable of running online auctions for multiple clients[.]" (Doc. No. 1-1 at 1, ¶ 2). It paid a significant amount of money for the project and yet, despite the payment, Spencie allegedly did not deliver the promised software. TFC was then forced to incur additional expenses by retaining another software

---

[2] Spencie either knew or should have known that no transfer of interest occurred. It asks the Court to draw inferences from materials susceptible to multiple interpretations that when weighed against the sworn statements of TFC's Chief Financial Officer and LiveAg's Vice President of Operations affirming a transfer never took place fall woefully short. Its reliance on Delaware law ignores the undisputed reality. The transfer simply never occurred. The reason the other members chose not to insist upon completing the transfer is not an issue before this Court. Accordingly, Spencie's legal arguments premised on the completed transfer fail.

vendor to develop the software. Given these allegations, "no more is needed to establish this classic economic injury[.]" <u>Cranpark</u>, 821 F.3d at 731.

Additionally, Spencie argues that TFC also fails to meet the redressability requirement because after the transfer, any relief would be LiveAg's alone. This contention is equally meritless because the proper focus of the redressability inquiry is "the causal connection between the alleged injury and the judicial relief requested." <u>Cranpark</u>, 821 F.3d at 731 (citing <u>Allen v. Wright</u>, 468 U.S. 737, 753 n. 19 (1984)). TFC, as of now, is entitled to relief.

This Court, therefore, holds that TFC has constitutional standing to pursue this litigation and the Motion to Dismiss will be denied.

### B. Unjust Enrichment

Spencie does not address any of TFC's arguments concerning its unjust enrichment claim in its reply. By failing to do so, it has forfeited any opposition to that argument. <u>See Humphrey v. U.S. Attorney Gen.'s Office,</u> 279 F. App'x 328, 331 (6th Cir. 2008) (treating a party's failure to oppose arguments as a waiver of opposition).

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

6